JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Draw Events, LLC

**DEFENDANTS**
Cooper's Ferry Partnership, Inc., Delaware River Waterfront Corporation, Herschend Family Entertainment Corporation d/b/a Herschend Family Entertainment, Adventure Aquarium, LLC d/b/a Adventure Aquarium, Independence Seaport Museum

**(b)** County of Residence of First Listed Plaintiff   Saint Louis County, MN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Josiah Knapp, Esquire--Ryan, Brown, Berger & Gibbons
1600 Market Street, Suite 1416, Philadelphia, PA 19103
(215) 564-3800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal ☐ 340 Marine / Injury Product ☐ 345 Marine Product / Liability | | ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability / **PERSONAL PROPERTY** ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☒ 190 Other Contract | Product Liability / ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage ☐ 362 Personal Injury - / Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 300,000 (including costs and attorney's fees)
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  3/9/17
SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Draw Events, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Cooper's Ferry Partnership, Inc. et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 3/9/17 | Josiah Knapp | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 564-3800 | (215) 564-1301 | Knapp@ryanbrown.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __2446 Vermillion Road, Duluth, Minnesota 55803__

Address of Defendant: __One Port Center, Two Riverside Drive, Suite 501, Camden, NJ 08103__

Place of Accident, Incident or Transaction: __Philadelphia and Camden Waterfronts__
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, ____Josiah Knapp____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: __3/9/17__    Josiah Knapp _[signature]_    61249
    Attorney-at-Law    Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __3/9/17__    Josiah Knapp _[signature]_    61249
    Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DRAW EVENTS, LLC<br>2346 Vermillion Road<br>Duluth, Minnesota 55803,<br>                  Plaintiff,<br>v.<br><br>COOPER'S FERRY PARTNERSHIP, INC.<br>One Port Center<br>Two Riverside Drive, Suite 501<br>Camden, New Jersey 08103<br>   and<br>DELAWARE RIVER WATERFRONT<br>CORPORATION<br>121 N. Columbus Blvd.<br>Philadelphia, Pennsylvania 19106<br>   and<br>HERSCHEND FAMILY ENTERTAINMENT<br>CORPORATION d/b/a HERSCHEND<br>FAMILY ENTERTAINMENT<br>5445 Triangle Parkway, Suite 200<br>Peachtree, Georgia 30092<br>   and<br>ADVENTURE AQUARIUM, LLC d/b/a<br>ADVENTURE AQUARIUM<br>1 Riverside Drive<br>Camden, New Jersey 08103,<br>   and<br>INDEPENDENCE SEAPORT MUSEUM<br>211 S. Christopher Columbus Blvd.<br>Philadelphia, Pennsylvania 19106<br><br>             Defendants. | CIVIL ACTION<br><br>NO. |

## COMPLAINT – CIVIL ACTION

Plaintiff, Draw Events, LLC ("Plaintiff"), by and through its undersigned counsel, brings the instant action arising from a breach of contract by the Defendants, Cooper's Ferry Partnership, Inc. ("CFP") and Delaware River Waterfront Corporation ("DRWC") and against Defendants Herschend Family Entertainment Corporation ("HFE"),

Adventure Aquarium, LLC ("AA") and Independence Seaport Museum ("ISM") as beneficiaries of such breach of contract causing them to be unjustly enriched at the expense of Plaintiff and various third parties.

I.    **JURISDICTION AND VENUE**

      1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different States.

      2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00

      3.    This Court may properly exercise jurisdiction over Defendants where they maintain certain minimum contacts with this District such that maintenance of this suit does not offend traditional notions of fair play.

      4.    This Court may properly exercise jurisdiction over Defendants where they have purposefully availed themselves of the privilege of acting within the District, the cause of action arose from the Defendants' activities and the Defendants regularly, deliberately and consistently utilize this District for business operations, including those involved in this matter.

      5.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, within the geographical limits of this District.

II.    **PARTIES**

      6.    Plaintiff, Draw Events, LLC is a Minnesota limited liability company with its principal place of business located at 2346 Vermillion Road, Duluth, Minnesota 55803.

7.    Defendant, Cooper's Ferry Partnership, Inc., is a New Jersey corporation that, at all relevant times herein has engaged in business within Philadelphia County, Pennsylvania, and has its principal place of business located at One Port Center, Two Riverside Drive, Suite 501, Camden, New Jersey 08103.

8.    Defendant, Delaware River Waterfront Corporation, is a Pennsylvania corporation with its principal place of business located at 121 N. Columbus Blvd., Philadelphia, Pennsylvania 19106.

9.    Defendant, Herschend Family Entertainment Corporation d/b/a Herschend Family Entertainment, is a Missouri corporation that, at all relevant times herein has engaged in business within Philadelphia County, Pennsylvania and has offices located at 5445 Triangle Parkway, Suite 300, Peachtree, Georgia 30092.

10.    Defendant, Adventure Aquarium, LLC, d/b/a Adventure Aquarium, is a New Jersey limited liability company that, at all relevant times herein has engaged in business within Philadelphia County, Pennsylvania and has offices located at 1 Riverside Drive, Camden, New Jersey 08103.

11.    Defendant, Independence Seaport Museum is a Pennsylvania entity with offices located at 211 S. Christopher Columbus Blvd., Philadelphia, Pennsylvania 19106.

12.    At all material times hereto, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant hereto in the course and scope of his/her employment with and for a Defendant.

III.    **FACTUAL BACKGROUND**

13.    Plaintiff is in the business of providing event management services.

3

14.   Defendant's CFP and DRWC solicited Plaintiff for event management services to organize and manage the Tall Ships Challenge event on the Camden and Philadelphia waterfronts which was to occur in June of 2015 ("Event").

15.   By Agreement dated August 4, 2014, CFP and DRWC (hereinafter CFP and DRWC shall collectively be "Company") contracted with Plaintiff for Plaintiff to perform management services related to the Event. ("Agreement" attached hereto as Exhibit A).

16.   CFP, DRWC, HFE, AA and ISM all agreed to participate in the funding and profits of the Event.

17.   Exhibit A of the Agreement states in part that "in a partnership between Cooper's Ferry Partnership, Delaware River Waterfront Corporation, Adventure Aquarium and the Independence Seaport Museum, Tall Ships Challenge 2015, will be coming to both the Camden and Philadelphia Waterfronts...."

18.   The Agreement states that CFP, Herschend Family Entertainment/Adventure Aquarium, DRWC and Independence Seaport Museum will each contribute $150,000 to the Event.

19.   As part of Plaintiff's management services, Plaintiff was to find vendors to perform work for the Event and negotiate terms under which such work would be performed.

20.   Throughout the course of the services being performed by Plaintiff for the Event, Company made various changes to the scope of work which was originally set forth in the Agreement.

21.   Throughout the course of the Event, Company made various changes to

the budget which was originally set forth in the Agreement.

22. In accordance with the Agreement, Company set up a bank account to handle all receipts and payments relevant to the Event.

23. During the course of the work under the Agreement, Plaintiff would gather invoices from vendors performing work for the Event and submit said invoices to Company for payment.

24. In addition to submitting invoices for work performed by vendors, Plaintiff would submit invoices for the contractual amount to be paid to Plaintiff by Company.

25. Beginning with an invoice submitted on June 19, 2015 by Plaintiff to Company and continuing throughout the remainder of the term of the Agreement, Company failed and refused to pay all invoices submitted by Plaintiff.

26. As a result of Company's failure and refusal to pay all invoices submitted by Plaintiff, various lawsuits have been filed in New Jersey and Pennsylvania against Plaintiff and Plaintiff's principal by vendors seeking payment.

27. In addition to the lawsuits that have been filed in both New Jersey and Pennsylvania, additional lawsuits have been threatened by vendors who are seeking payment from Plaintiff for the work performed for Company's Event.

28. Company has failed and refused to pay more than Two Hundred Thousand Dollars ($200,000.00) of invoices for the Event.

29. Despite Company's failure and refusal to pay all invoices for the Event, CFP, DRWC, HFE, AA and ISM shared approximately $550,000 from the Event bank account after the Event had ended and all invoices had been submitted by Plaintiff.

30. As a result of CFP, DRWC, HFE, AA and ISM removing all of the money

from the Event bank account and taking that money for themselves without paying the outstanding invoices from the various vendors that performed work on the Event, the Defendants have caused Plaintiff to incur liability, attorney fees and costs defending claims by the various vendors involved in the Event.

31.    At paragraph 11(j) of the Agreement it states that "if any legal actions are necessary to enforce this agreement, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses in addition to any other relief to which the prevailing party may be entitled."

32.    Paragraph 5 of the Agreement provides that Company will indemnify Plaintiff in the event that Company's actions cause damage or expense or result in claims against the Plaintiff.

## COUNT I

### Plaintiff v. Defendants CFP and DRWC

33.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

34.    In accordance with the Agreement, Plaintiff identified and negotiated deals with various vendors for such vendors to perform services for the Event.

35.    Each vendor submitted invoices to Plaintiff for the services performed for the Event.

36.    In accordance with the Agreement between Plaintiff and Company, Plaintiff submitted each vendor invoice to Company for payment.

37.    In addition to submitting each vendor invoice to Company for payment, Plaintiff submitted Plaintiff's own monthly billing to Company for payment.

38.    In contravention of the Agreement between Plaintiff and Company, Company failed and refused to pay the invoices submitted by Plaintiff.

39.    Furthermore, in contravention of the Agreement between Plaintiff and Company, Company failed and refused to pay Plaintiff all amounts due to Plaintiff under the Agreement.

40.    Plaintiff made various attempts to get Company to pay the vendors and pay Plaintiff the amounts invoiced and submitted.

41.    Despite Plaintiff's various attempts to resolve this matter, Company refused to engage in any meaningful discussion to resolve the outstanding amounts.

42.    As a result of Company's breach of contract, Defendant has incurred liability, attorney fees, costs and expenses.

43.    Furthermore, as more lawsuits are brought against Plaintiff by the various vendors seeking payment, Plaintiff will continue to incur additional liability, attorney fees, costs and expenses.

44.    Since the various vendors involved are in either New Jersey or Pennsylvania, the lawsuits being brought against Plaintiff are being brought in either state.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership and Delaware River Waterfront Corporation, jointly and severally, for breach of contract, in an amount in excess of $200,000 together with attorney fees, costs and all other remedies that this Court deems equitable and just.

## COUNT II

### Plaintiff v. Defendants CFP and DRWC

45.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

46.     Pursuant to the Agreement, Company owes Plaintiff a duty to indemnify Plaintiff from any claims, damages, loss, costs, attorney fees or expenses which result from Company's actions or omissions relevant to the Agreement and Event.

47.     Company's failure and refusal to pay Plaintiff the amounts due for vendor invoices has resulted in various lawsuits against Plaintiff and Plaintiff's principal for the amounts that were supposed to by paid by Company for the Event.

48.     Furthermore, Company's failure and refusal to pay Plaintiff the amounts due for vendor invoices has resulted in demands against Plaintiff for payment of amounts due to vendors for work done on behalf of the Event.

49.     As a result of the lawsuits filed against Plaintiff and the demands for payment from vendors, Plaintiff has suffered damages, loss, attorney fees, costs and expenses.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership and Delaware River Waterfront Corporation, jointly and severally, for indemnification from all claims brought by any vendor to the Event, together with attorney fees, costs and all other remedies that this Court deems equitable and just.

8

## COUNT III

### Plaintiff v. All Defendants

50.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

51.    All of the Defendants benefited from the amounts received by each Defendant from the Event bank account.

52.    The amounts received by each Defendant from the Event bank account should more properly have been used to pay the Plaintiff and various vendors for the outstanding invoices.

53.    As a result of the amounts received by the Defendants from the Event bank account, Plaintiff has been subjected to unjust liability, attorney fees, costs, expenses and damages.

54.    As a result of the actions of Defendants, Plaintiff is entitled to common law and statutory indemnity from any and all claims, damages, actions, attorney fees, costs and expenses.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership, Delaware River Waterfront Corporation, Herschend Family Entertainment, Adventure Aquarium and Independence Seaport Museum, jointly and severally, for indemnification from all claims brought by any vendor to the Event, together with attorney fees, costs and all other remedies that this Court deems equitable and just.

9

## COUNT IV

### Plaintiff v. All Defendants

55.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

56.     Defendants held the Event in an effort to benefit the Camden and Philadelphia waterfronts and their individual interests therein.

57.     Plaintiff and all vendors, having provided labor and/or materials for the Event, thereby benefited the Event.

58.     Defendants benefited from the labor and/or materials provided by Plaintiff and the various vendors for the Event.

59.     Plaintiff and the vendors should be paid a reasonable amount for the labor and/or materials furnished for the Event.

60.     Pursuant to the doctrine of Quantum Meruit, Defendants are liable to pay Plaintiff and all vendors for the labor and/or materials provided for the Event.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership, Delaware River Waterfront Corporation, Herschend Family Entertainment, Adventure Aquarium and Independence Seaport Museum, jointly and severally, for all amounts owed for labor and/or materials provided for the Event, together with attorney fees, costs, expenses and all other remedies that this Court deems equitable and just.

## COUNT V

### Plaintiff v. All Defendants

61.     Plaintiff repeats and realleges the above paragraphs as though fully set

10

forth herein.

62.     As a result of the work done by Plaintiff various vendors provided labor and/or materials for the Event.

63.     As a result of the labor and/or materials provided by Plaintiff and vendors, revenue was generated by the Event.

64.     Defendants were the beneficiaries of the Event revenue without paying for the labor and/or materials supplied by Plaintiff and the vendors.

65.     As a result of taking the revenue without paying for the labor and/or materials supplied by Plaintiff and the vendors, Defendants have been unjustly enriched.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership, Delaware River Waterfront Corporation, Herschend Family Entertainment, Adventure Aquarium and Independence Seaport Museum, jointly and severally, for all amounts owed for labor and/or materials provided for the Event, together with attorney fees, costs, expenses and all other remedies that this Court deems equitable and just.

## COUNT VI

## Plaintiff v. All Defendants

66.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

67.     Defendants deprived Plaintiff of the use of the funds in the Event bank account to pay the various vendors.

68.     Plaintiff had a right to use the funds in the Event bank account to pay the

various vendors.

69.    Plaintiff had a right to be paid for Plaintiff's services from the funds in the Event bank account.

70.    Defendants had no lawful justification for depriving Plaintiff of the funds in the Event bank account necessary to pay Plaintiff and the various vendors.

71.    Defendants did not have Plaintiffs consent take and use the money for Defendants' own purposes without first paying all necessary invoices.

72.    As a result of Defendants conversion of the funds in the Event bank account for their own use, Plaintiff was damaged.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership, Delaware River Waterfront Corporation, Herschend Family Entertainment, Adventure Aquarium and Independence Seaport Museum, jointly and severally, for all amounts owed to Draw Events and all vendors for the Event, together with attorney fees, costs, expenses and all other remedies that this Court deems equitable and just.

## COUNT VII

### Plaintiff v. Defendants CFP and DRWC

73.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

74.    After Company failed and refused to pay the invoices submitted by Plaintiff, Company told vendors that called for payment that their money was paid to Plaintiff and therefore they needed to seek payment from Plaintiff.

75.    As a result of this misrepresentation by Company, Plaintiff has incurred

liability and been subject to claims by vendors seeking payment which has resulted in damages, loss, attorney fees, costs and expenses for Plaintiff.

WHEREFORE, Plaintiff Draw Events requests that this Honorable Court enter judgment in its favor and against Cooper's Ferry Partnership and Delaware River Waterfront Corporation, jointly and severally, as a result of their misrepresentations, for all amounts owed to Draw Events and all vendors for the Event, together with attorney fees, costs, expenses and all other remedies that this Court deems equitable and just.

**RYAN, BROWN, BERGER & GIBBONS, P.C.**

By: _____
Josiah Knapp, Esq.
Attorney for Plaintiff
Draw Events, LLC

PA Attorney ID No. 61249

1600 Market Street
Suite 1416
Philadelphia, PA 19103
Office: (215)564-3800
Fax:    (215)564-1301
Email: Knapp@RyanBrown.com

Date: March 9, 2017

13

# EXHIBIT "A"

August 4, 2014

**SERVICES AGREEMENT AMONG COOPER'S FERRY PARTNERSHIP, DELAWARE RIVER WATERFRONT CORPORATION AND DRAW EVENTS FOR EVENT MANAGEMENT SERVICES RELATED TO THE TALL SHIPS CHALLENGE® CAMDEN/PHILADELPHIA 2015**

These terms and conditions shall govern the relationship among the Parties herein without exception unless agreed to in writing by both Parties.

THIS SERVICES AGREEMENT ("Agreement") is made and entered into on this _____ day of August, 2014 ("Effective Date") by and among the Cooper's Ferry Partnership (hereinafter "CFP"), Delaware River Waterfront Corporation (hereinafter "DRWC" and, collectively with CFP, the "Company") and Draw Events, also referred to herein as "Contractor" (collectively "a Party" or "the Parties") with regard to the aforementioned and the following:

WHEREAS, As used herein, the following terms shall have the respective meanings indicated:

    A.    "CFP" shall mean Cooper's Ferry Partnership, a body corporate, with an address at One Port Center, Two Riverside Drive, Suite 501, Camden, New Jersey, 08103.

    B.    "DRWC" shall mean Delaware River Waterfront Corporation, a body corporate, with an address of 121 N. Columbus Blvd., Philadelphia, Pennsylvania, 19106.

    C.    "Company" shall mean CFP and DRWC, collectively.

    D.    "Contractor" shall mean Draw Events, a body corporate, with an address at 2346 Vermillion Road, Duluth, Minnesota, 55803.

WHEREAS, the Company has taken steps to recruit and participate in the Tall Ships Challenge® Camden/Philadelphia from June 25-28, 2015;

WHEREAS, the Company has solicited Contractor for event management services to organize and manage the Tall Ships Challenge® Camden/Philadelphia 2015 Event on both the Camden and Philadelphia Waterfronts;

WHEREAS, the Contractor has prior experience working in an event management capacity for other entities in management and organization for Tall Ships events and the Company identifies the need and the benefit to the event to engage the Contractor given this experience;

WHEREAS, the Parties have agreed on a Scope of Work, a copy of which is attached hereto as <u>Exhibit A</u>.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    TERM & TERMINATION
    a.    The Term of this Agreement shall commence upon the Effective Date and shall continue up to and including <u>July 30, 2015 ("Term").</u> Company shall have, at its sole discretion, the option to extend this Agreement upon the same terms <u>and</u> conditions contained in this Agreement for a period of 15 months provided Company gives written notice of their intent to extend in writing prior to the expiration of the Term.

August 4, 2014

    b.  Notwithstanding the foregoing:

        i.  <u>Termination Without Cause</u>. Company shall have the right to terminate this Agreement for any reason upon providing Contractor with thirty (30) days prior written notice of its intent to terminate.

        ii.  <u>Termination for Cause</u>. If either party should fail, refuse or neglect to fulfill and perform any obligation created by the terms of this Agreement as and when called for ("Defaulting Party"), then the other party shall have the right, in addition to any other rights or remedies provided at law or in equity, to terminate this Agreement by providing written notice thereof to the Defaulting Party. If such violation is not corrected to the reasonable satisfaction of Non-Defaulting Party within ten (10) days after the date of notice of violation, or within such a reasonable time as may be required to cure the violation (provided the acts to cure the violation are commenced within ten (10) days and thereafter diligently pursued to completion), the Non-Defaulting Party may, without further notice, declare Defaulting Party to be in breach of this Agreement and terminate the agreement.

        iii.  In the event either party terminates this Agreement for Default, the terminating party herein expressly reserves all of the rights and remedies available to the terminating party at law and in equity.

2.  SERVICES:

    a.  The Scope of the Work shall be set forth in <u>Exhibit A</u> attached hereto and incorporated herein for all purposes.

    b.  In exchange for the Work provided by the Contractor, Company agrees to pay Contractor an amount not to exceed the budget and invoice as attached hereto as <u>Exhibit B</u> and agreed upon by the Parties.

    c.  The Contractor is, and shall be for all purposes, an independent contractor and not an agent or employee of Company. Contractor's personnel are, and shall at all times and for all purposes be, employees of Contractor, and not employees of CFP or DRWC, and other than the foregoing specific, limited authority to assign and monitor projects, CFP and DRWC shall have no control over the performance of Contractor's personnel. Contractor's personnel are not subject to personnel policies and procedures covering CFP or DRWC employees. Contractor shall be responsible for all its personnel and shall be responsible to furnish and complete the services requested by CFP or DRWC in a first class, competent and professional manner within the completion times that CFP and DRWC may establish.

    d.  The Contractor has the sole right to control and direct the means, manner and method by which the Scope of Work required by this Agreement will be performed.

    e.  This Agreement is not exclusive and CFP and/or DRWC may, individually or collectively, contract with others to provide or provide with its own employees services of a similar or identical nature to the Scope of Work provided by Contractor; provided, however, that during the term hereof, the Contractor shall not, directly or indirectly, provide management services or otherwise engage, whether as a principal or as agent,

August 4, 2014

  alone or in association with any other person or entity in any other Tall Ships event south of Newport, Rhode Island and north of Norfolk, Virginia.

f. Contractor shall maintain all records related to the Scope of Work for a period of 7 years after final completion of all Work, in accordance with general accepted accounting principles, and each of CFP and DRWC reserves the right to audit such records upon reasonable notice.

g. All costs shall be detailed in the Scope of Work attached hereto as <u>Exhibit A</u>. It is not anticipated that Company will reimburse any other costs to Contractor. Expenses are to be included with the total project cost.

h. If a situation arises where Company shall reimburse Contractor, in accordance with the standard expense reimbursement policy of Company, for additional expenses incurred by Contractor in connection with Contractor's performance of duties hereunder, <u>Company shall ONLY reimburse to the extent that such expenses are specifically approved as to type, scope and amount by the Company before Contractor incurs such expenses, upon presentation of original receipts for such expenses or other suitable documentation reasonably acceptable to Company.</u> Contractor will be (i) subject to Company's travel policy, as that policy may be changed from time to time, and (ii) required to provide advance notice to Company of all plans for travel in connection with the Services being rendered hereunder.

i. <u>Change Orders</u>. Although not expected or encouraged, Company and Contractor recognize that in some circumstances, Company may desire a mid-project change in Contractor's Services or Scope of Work that would add time and cost to the project, Contractor's original cost and time estimates may be too low due to unforeseen events, or to factors unknown to Contractor when this Agreement was made, or other provisions of this Agreement may be difficult to carry out due to unforeseen circumstances. <u>If any intended changes or any other events beyond the parties' control require adjustments to this Agreement, the parties shall make a good faith effort to agree on all necessary particulars. Such agreements shall be put in writing, signed by the parties and will be incorporated by reference and considered an Amendment to this Agreement.</u>

j. Information about the Company. Contractor shall not circulate, disseminate or otherwise distribute any written materials relating to or describing the CFP, DRWC or any of the activities of either CFP or DRWC without having first received approval of such written materials from CFP or DRWC. Contractor shall indemnify, defend and hold harmless the Company from any loss, liability, cost or expense incurred by the Company as a result of any action taken by the Contractor in violation of the covenant contained in the immediately preceding sentence or as a result of any other representation or statement made by Contractor which was not specifically authorized by CFP or DRWC to be made.

3. RELATIONSHIP OF CFP AND DRWC

  a. Subject to the specific requirements of the Tall Ships Challenge® the Events shall include the showcase of Tall Ships at ports on both the New Jersey and Pennsylvania waterfronts which will serve to provide important tourism draw to the respective waterfronts.

August 4, 2014

    b.  All rights of the Company hereunder shall inure to, and all obligations of the Company hereunder shall be borne by, CFP and DRWC, in equal shares. Without limiting the generality of the above, each of CFP and DRWC shall pay one-half of all amounts payable hereunder, up to a maximum of $600,000 in the aggregate, as follows:

        i.  $150,000 contributed by CFP;

        ii.  $150,000 contracted and collected by CFP from Hershend Family Entertainment/Adventure Aquarium (the "Aquarium");

        iii.  $150,000 contributed by DRWC; and

        iv.  $150,000 contracted and collected by DRWC from Independence Seaport Museum (the "Seaport Museum").

    c.  All invoices for amounts payable hereunder shall be submitted by Contractor to CFP and DRWC, each of whom shall pay 50% of such invoice(s), or such other portions as they may agree, including the use of a joint account for Company for expenses and profits under this initiative.

    d.  All decisions to be made the Company hereunder shall be made jointly by the designated representatives of CFP and DRWC, who shall be: for CFP, Anthony J. Perno, III, Chief Executive Officer, and for DRWC, Thomas Corcoran, President, after consultation with the Aquarium and the Seaport Museum, as appropriate.

    e.  Profits from the event shall be shared as set forth in the Scope of Work; provided, however, that as between CFP and DRWC, the first $470,000 of event profit shall be paid 50% to DRWC (to be shared with the Seaport Museum), and 50% to CFP, after which all amounts designated as being paid to the "anchor institutions" shall be paid 50% to each of DRWC and CFP. CFP and DRWC shall contract their own separate profit-sharing arrangements with the Aquarium and the Seaport Museum, respectively, and shall indemnify and hold each other harmless from any liabilities that may arise as a result of such arrangements.

    f.  CFP and DRWC agree to cooperate with each other and to provide all necessary and reasonable documentation, certificates and consents in order to satisfy the terms and conditions hereof.

    g.  Each of CFP and DRWC shall indemnify, defend and hold the other party harmless from and against its breach of this Agreement and/or such party's gross negligence or willful misconduct in connection herewith.

4.  INSURANCE

    a.  Contractor shall provide a certificate of insurance listing all the below listed limits and listing each of CFP and DRWC as Certificate Holder and listing additional potentially liable parties as Additional Insured with respect to this use.

    b.  The limits required are as follows: Commercial General Liability Insurance for the limits of not less that One Million Dollars ($1,000,000.00) per occurrence Bodily Injury and Property Damage combined; One Million Dollars ($1,000,000.00) per occurrence Personal & Advertising Injury; Two Million Dollars ($2,000,000.00) aggregate Products and Completed Operations Liability and Two Million Dollars ($2,000,000.00) general aggregate limit per policy. This policy shall be written on an occurrence basis.

August 4, 2014

    c.   Statutory Workers Compensation including Employer's Liability Insurance, subject to limits of not less than Five Hundred Thousand Dollars ($500,000.00) affording coverage under the Workers Compensation laws of the State of New Jersey and the Commonwealth of Pennsylvania.

    d.   Comprehensive Automobile Liability containing a One Million Dollar ($1,000,000.00) combined single limit covering all owned, non-owned and hired vehicles. Policy shall be endorsed to name additional insureds as respect the operations of the named insureds, its agents, contractors and employees; and

    e.   Umbrella Liability Insurance at not less than Four Million Dollars ($4,000,000.00) limit providing excess coverage over all limits and coverage noted above. This policy shall be written on an occurrence basis.

    f.   Company and Contractor shall coordinate to secure additional event insurance policies

5.   INDEMNIFICATION AND LIMITS OF LIABILITY

    a.   To the extent permitted by law, Contractor agrees to indemnify, hold harmless, and defend Company, its employees, agents and representatives from and against any and all liability for loss, damage or expense which Company may suffer or for which it may be held liable by reason of injury (including death) to any person or damage to any property arising out of or in any manner connected with its services under the terms of this Agreement, except when due to the gross negligence or willful misconduct of the Company. Company agrees to provide reciprocal indemnity to Contractor for the same as expressed above except when due to the gross negligence or willful misconduct of the Contractor.

    b.   To the fullest extent permitted by law, Contractor expressly agrees to indemnify, defend, and hold harmless Company parties from and against any and all claims or loss arising out of any violation of any law, rule, regulation or order, and from any and all claims or liabilities, including reasonable attorney's fees, for loss, damage or injury to persons or property of whatever kind or nature arising from the acts or omissions of Contractor, its parents, partners, affiliates, subsidiaries, successors or assigns and each of their respective agents, employees, representatives and contractors except when due to the gross negligence or willful misconduct of the Company. Company agrees to provide reciprocal indemnity to Contractor for the same as expressed above except when due to the gross negligence or willful misconduct of the Contractor.

    c.   EXCEPT WITH RESPECT TO A BREACH OF CONFIDENTIALITY OR IN THE EVENT OF ITS WILLFUL MISCONDUCT, IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, PUNITIVE OR SPECIAL DAMAGES IN CONNECTION WITH THIS AGREEMENT.

    d.   Should Company terminate the Agreement without cause, the Contractor's damages are limited to the monetary amount of the services provided by Contractor prior to termination of the Agreement. Should the Agreement be terminated as a result of breach or default by Company, the Contractor's damages are limited to the Agreement amount as set forth in Exhibit B.

August 4, 2014

    e.   Contractor shall indemnify Company for any claims brought against Company as a result of the conduct of one or more of Contractor's employees in violation of any state or federal law, including, but not limited to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Workers' Adjustment and Retraining Notification Act, the Americans with Disabilities Act of 1990 and any other federal, state, or local law prohibiting age, race, color, gender, creed, religion, sexual preference/orientation, marital status, national origin, gender identity, mental or physical disability, veteran status or any other form of unlawful discrimination or claims under any federal, state, or local law prohibiting age, race, color, gender, creed, religion, sexual preference/orientation, marital status, national origin, gender identity, mental or physical disability, veteran status or any other form of unlawful discrimination or claims under any federal, state or local constitutions, statutes, rules or regulations or tortious conduct (whether intentional or otherwise) including but not limited to defamation and violations public policy except when due to actions of the Company. Company agrees to provide reciprocal indemnity to Contractor for the same as expressed above except when due to actions of Contractor.

6.   REPRESENTATIONS AND WARRANTIES

    a.   Contractor warrants that any products or materials provided by it hereunder shall be free from defects in workmanship and/or materials and be fit for its intended purpose. Services shall be performed by Contractor in a good and a workmanlike manner. Contractor shall be fully licensed, certified and bonded as customary or required by Company or applicable law. Contractor agrees that any damage arising from any breach of this representation and warranty shall be promptly remedied by Contractor at its sole expense.

    b.   Contractor shall at all times comply with all applicable laws, codes, regulations and rules with respect to the work to be performed and the products, equipment or materials to be furnished to Company and any and all federal, state, municipal or other legislative bodies, courts or agencies having jurisdiction over the business of Contractor. Any licenses, permits, and required recordkeeping shall be provided to Company during the Term of the Agreement and for a period of seven (7) years after the expiration or termination of this Agreement upon written request by Company.

    c.   To the fullest extent possible by law, Contractor will operate in accordance with all appropriate rules and regulations, codes, and ordinances, as may be applicable or established.

7.   INTELLECTUAL PROPERTY

    a.   Except as otherwise provided in Section 8, each Party to the Agreement is, and shall remain, the owner of all rights it has in all creative and copyrightable material created by it, trademarks, service marks and other intellectual property as they may exist or may hereafter be modified by such Party (each Party's "Marks"). Each Party acknowledges that its use of the other Party's Marks inures to the benefit of the Party owning such Marks, including any goodwill, and that neither Party will acquire any ownership in the

August 4, 2014

other Party's Marks as a result of this Agreement. Neither Party shall use the other Party's Marks or allow any other Party to use the other's Marks in any manner not specifically granted in writing by the owner of such Marks prior to use. If permission is so granted, the Marks shall be used only in the format in accordance with the specifications provided by the Party granting such use from time to time, unless approval to modify the Mark(s) is expressly granted. All materials using a Party's Marks must be pre-approved by the Party owning such Marks. Company may monitor and object to any unauthorized use of Company's Marks and Contractor agrees that, upon notice from Company of any such unauthorized use, Contractor shall immediately cease such unauthorized use of Company's Marks. Failure to immediately cease such unauthorized use shall constitute a material breach of this Agreement and cause for termination of this Agreement under Section 1 above. Contractor may also monitor and object to any unauthorized use of Contractor's Marks and Contractor agrees that, upon notice from Contractor of any such unauthorized use, Company shall immediately cease such unauthorized use of Contractor's Marks. Failure to immediately cease such unauthorized use shall constitute a material breach of this Agreement and cause for termination of this Agreement under Section 1 above.

8.  OWNERSHIP OF WORK PRODUCT: Any and all work product created by Contractor or its/his/her agents, employees or sub-suppliers, exclusively within the scope of Work (including, but not limited to, all deliverables) does and shall belong to CFP and DRWC jointly, together with all associated rights, title and interests in and to such work product. Contractor acknowledges that any and all copyrightable work done for Company under this Agreement shall be "work made for hire" under the U.S. Copyright Law (17 USC S 101). If such work product is ineligible for treatment as "works made for hire," Contractor hereby assigns to Company all rights, title and interest in all such work product, including patents, copyrights, and other intellectual property rights unless otherwise protected within this Agreement. Contractor waives any and all claims that it/he/she may now or hereafter have in any jurisdiction to "moral rights" or rights of "droit moral" with respect to such work product. In addition, to the extent such rights may not be waived, Contractor covenants not to assert such rights against Company or its licensees, successors, or assignees. Notwithstanding the foregoing, any intellectual property previously or simultaneously created by the Contractor not exclusively within the Scope of Work, shall remain the exclusive property of the Contractor. The Company hereby acknowledges that such intellectual property of Contractor is extensive, is essential to the work of Contractor, and Contractor's selection for the Services by the Company is in great part due to the intellectual property it owns and has created. The Company hereby explicitly makes no claim to the ownership of such property. Contractor hereby grants the Company a limited use of the rights to such intellectual property in connection with the carrying out of the Services under this Agreement by Contractor.

9.  CONFIDENTIALITY.
    a.  Except for disclosure (a) authorized by the express prior written consent of Company; (b) by Contractor's attorneys as may be necessary to allow for effective legal representation of Contractor's interests; or (C) required pursuant to any legal proceeding after prior

August 4, 2014

notice to Company, Contractor will never directly or indirectly, at any time during the Term, or at any time subsequent to the termination of this Agreement, for any reason, with or without cause, use, disseminate, disclose, divulge or in any manner disclose or permit to be divulged or disclosed to any person, firm, corporation, association or other business entity trade secrets, secret methods or other "Confidential Information" (hereinafter defined) of Company. As used herein, the term "Confidential Information" means any and all information provided or made available by the Company to the Contractor, including but not limited to information relating to the methods, processes, customers, services or products of Company, its subsidiaries or other affiliated companies, that is not generally known by individuals who are not and have never been employed by, or engaged as consultants of, Company, except information that: (i) is now or subsequently becomes generally available to the public through no wrongful act or omission of the recipient; (ii) the recipient can demonstrate to have had rightfully in its possession prior to disclosure to recipient by the discloser; or (iii) is independently developed by the recipient without use, directly or indirectly, of any Confidential Information, Contractor or others employees or consultants of Company during the Term shall belong to Company, including all rights to exploit any Confidential Information. In the event of a breach or threatened breach by Contractor of this Section 9, Company shall be entitled to seek an injunction-restraining Contractor from violating Contractor's covenants in this Section 9. In addition, nothing contained herein shall in any manner be construed to prohibit or limit Company from pursuing against Contractor or others all other remedies available to Company, at law or in equity, from a breach of this Section 9.

    b.  Company agrees to provide mutual confidentiality to the benefit of Contractor with the same restrictions and limits as set forth fully in Section 9a. above.

10. <u>WAIVER OF BENEFITS/TAXES</u>. Contractor hereby expressly represents, warrants, acknowledges and stipulates to the Company that Contractor is an independent contractor and is not an employee of the Company. Accordingly, Contractor is not eligible for unemployment insurance, workman's compensation, employee benefits or other perquisites provided from time to time by the Company to its employees. Contractor shall pay all Taxes (as that term is hereinafter defined). As used herein, the term "Taxes" shall mean all taxes, assessments, charges or fees assessed or levied by any country, government or political subdivision thereof, (a) against Contractor (including without limitation, all income and self-employment taxes), (b) on account of the Services provided or work produced hereunder, whether assessed or levied against Contractor or Company, (c) on account of property or equipment owned by Contractor, whether assessed or levied against Contractor or Company, or (d) on account of any compensation paid or earned, or benefits earned hereunder (if so provided for herein). Contractor further agrees to indemnify, defend and hold harmless the Company from and against any Taxes, assessments, charges and fees assessed or levied against or on account of wages, salaries, payments or benefits paid or earned by any assistants or agents of Contractor.

11. MISCELLANEOUS
    a.  This Agreement, or any part hereof, may be assigned or transferred by Company to any person or entity. Neither this Agreement nor any part hereof shall be transferred,

August 4, 2014

conveyed or assigned by Contractor without the prior written consent of Company, except to any sub-contractors of Contractor previously approved by the Company (in which event, the Contractor shall remain primarily liable hereunder). Any assignment or attempted assignment in violation of this Section shall be null and void.

b.  This Agreement contains the entire Agreement between the Parties relating to the subject matter hereof and all prior agreements relative hereto which are not contained herein are terminated. This Agreement may not be amended, revised or terminated orally except only a written instrument executed by the Party against which enforcement of the amendment, revision or termination is asserted.

c.  Nothing herein contained shall create or be construed as creating a partnership, employment, joint venture or agency relationship between the Parties and no Party shall have the authority to bind the other in any respect.

d.  All of the terms of this Agreement shall apply to, be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, heirs and legal representatives, and all other persons claiming by, through or under them.

e.  All representations, warranties, agreements to indemnify and covenants shall survive any partial performance or non-performance of this Agreement. The obligations of Sections 5, 6, 7, 8 and 9 shall survive expiration or earlier termination of this Agreement.

f.  This Agreement shall be governed by and construed according to the laws of the State New Jersey.

g.  Any and all sales tax, amusement tax or other tax imposed by local, state, provincial or federal government as a result of the performance of any Services rendered in connection with this Agreement shall be the responsibility of and paid for by Party at the time required by law.

h.  If either Party fails to enforce any of the provisions of this Agreement or any rights or fails to exercise any election provided in this Agreement, it will not be considered to be a waiver of those provisions, rights or elections or in any way affect the validity of this agreement. The failure of either Party to exercise any of these provisions, rights or elections will not preclude or prejudice such Party from later enforcing or exercising the same or any other provisions, right or election which it may have under this Agreement.

i.  If any term, provision, covenant or condition of the Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of this Agreement will remain in full force and effect and will in no way be affected, impaired or invalidated

j.  Attorney's Fees. If any legal actions are necessary to enforce this agreement, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses in addition to any other relief to which the prevailing party may be entitled.

k.  All notices given hereunder shall be in writing and shall be deemed to have been duly given in delivered personally with receipt acknowledged or sent by registered or certified mail or equivalent, if available, return receipt requested, or by facsimile (which shall also be confirmed with a writing sent by registered or certified mail or equivalent on the same day that such facsimile is sent), or by nationally recognized overnight courier for next day delivery, addressed or sent to the parties at the addresses set forth below:

August 4, 2014

To Company:
Cooper's Ferry Partnership
2 Riverside Drive, Suite 501
Camden, NJ 08103
856-757-9154 (m)
856-757-9478 (f)
Attn: Anthony Perno, CEO


And


Delaware River Waterfront Corporation
121 N. Columbus Blvd.
Philadelphia, PA 19106
_____ (m)
_____ (f)
Attn: Thomas Corcoran, President


To Contractor:
Draw Events
2346 Vermillion Road
Duluth, MN 55803
626-656-3729
(f) _____
Attn: Craig Samborski, CEO


l.  The failure of any Party hereto to comply with the terms and conditions hereof because of
    a "Force Majeure Occurrence" shall not be deemed a breach of this Agreement. "Force
    Majeure Occurrence" shall be defined to include, without limitation, Act of God, strike,
    labor disputes, war, fire earthquake, acts of public enemies, acts of terrorism, epidemic,
    action of federal, state or local governmental authorities or an event or reason beyond the
    reasonable control of a Party. Each Party shall be relieved of its obligations hereunder
    with respect to the performance so prevented by a Force Majeure Occurrence except for
    any payment obligation of the Company hereunder.

m.  The Parties agree that, should any difference of interpretation, or any other controversy or
    claim arise out of or relate to this Agreement or any addendums or amendments hereto, or
    the breach hereof, the Parties shall immediately make good faith efforts to negotiate a
    written voluntary resolution of the matter prior to instigating legal proceedings. The
    Parties therefore agree that should a Party believe the other Party has breached this
    Agreement, the non-breaching Party shall provide the Party with written notice of such
    alleged breach and provide the Party with ten (10) days from receipt of such notice to
    either (i) contest the allegation or (ii) cure the alleged breach prior to seeking legal
    recourse.

August 4, 2014

n.  CFP and DRWC are equal opportunity employers and actively support federal, state and local laws prohibiting discrimination in employment practices because or ace, color, religion, veteran's status, sex, pregnancy and pregnancy related medical conditions, gender identify, marital status, national origin, ancestry, physical or mental disability, medical condition, age, sexual orientation, or any other classifications protected by law. CFP and DRWC further comply with any and all other federal, state and local employment laws and regulations (including, but not limited to, those pertaining to family or medical leave and other fair employment practices). All of the foregoing is collectively referred to as the "Employment Obligations." Each of CFP and DRWC requires that Contractor shall comply with the Employment Obligations with regard to Contractor's employees assigned to CFP and/or DRWC facilities or any of its subsidiaries or divisions, and Contractor agrees to comply with all applicable Employment Obligations as set forth herein.

o.  Headings.  The headings used in this Agreement are used for administrative purposes only and do not constitute substantive matter to be considered in construing the terms of this Agreement.

p.  Miscellaneous.  Each and all of the several rights and remedies provided for in this Agreement shall be construed as being cumulative and no one of them as being exclusive of the other or of any right allowed by law or in equity.  This Agreement is not subject to any terms or condition of any collective bargaining agreement.

q.  This Agreement may be executed and transmitted via facsimile and or electronic mail and in any number of counterparts, and each of such counterparts shall be deemed an original.


**[SIGNATURE PAGE NEXT]**

August 4, 2014

ACCEPTED AND AGREED as of the date first above written.

Cooper's Ferry Partnership (CFP)

By: _____

Anthony Perno
Chief Executive Officer
Cooper's Ferry Partnership
2 Riverside Drive, Suite 501
Camden, NJ 08103
856-757-9154 (m)
856-757-9478 (f)
perno@coopersferry.com


Delaware River Waterfront Corporation (DRWC)

By: _____

Thomas Corcoran
President
Delaware River Waterfront Corporation
121 N. Columbus Blvd.
Philadelphia, PA
_____ (m)
_____ (f)


Draw Events

By: _____

Craig Samborski
Chief Executive Officer
Draw Events
2346 Vermillion Road
Duluth, MN 55803
626-656-3729
craig@drawevents.com

August 4, 2014

## EXHIBIT A
## SCOPE OF WORK

These terms and conditions shall govern the relationship between the Parties herein without exception unless agreed to in writing by both Parties.

1. Duties and Responsibilities ("Services"):

    a. Attached is a detailed Scope of Services for the work to be completed by Cooper's Ferry Partnership and Draw Events under this agreement.

TALL SHIPS CHALLENGE®, created by the non-profit, Tall Ships America, is an annual event made of a fleet of traditionally-rigged sailing vessels from Canada, the US and other countries whose crews are engaged in sail training programs under the supervision of captains and professional crewmembers.

In a partnership between Cooper's Ferry Partnership, Delaware River Waterfront Corporation, Adventure Aquarium, and the Independence Seaport Museum, TALL SHIPS CHALLENGE® 2015, will be coming to both the Camden and Philadelphia Waterfronts from Thursday, June 25, 2015 to Sunday, June 28, 2015. These maritime festivals and events stimulate the local economy; bring visibility to the host ports; and promote public awareness of adventure and education under sail. Throughout the weekend, thousands of people will visit the Philadelphia and Camden waterfronts to interact with and learn about different vessels' crews from around the world.

Crucial to a successful event and effort is to utilize an experienced planner and manager for all fundraising, operations, ticketing and promotion. The joint partnership is utilizing the services of a professional event manager for the Tall Ships Challenge to implement the event and coordinate with all event stakeholders in Camden and Philadelphia.

Draw Events, in Duluth MN with Craig Samborski as its president, was strongly recommended to the joint port of Camden/Philadelphia because of his nationally renowned work on events that he has managed and his experience of past Tall Ships events. Draw Events is currently managing the Tall Ships event in Los Angeles, and is one of the few qualified to manage a dual-port Tall Ships event in Camden and Philadelphia. All stakeholders have approved engaging a professional operations manager for this event and know it will provide the essential elements necessary to have a world-class event.

## SCOPE OF SERVICES

Draw Events will provide the following event management services for Tall Ships Challenge® Camden/Philadelphia June 25-28, 2015, all items as mutually agreed upon by the Company partners:

Event Management

- Create and manage event budget
- Create and manage strategic event plan, identifying all tasks
- Plan and attend all event related meetings
- Create and manage event site plan
- Maintain detailed communications with all event stakeholders

August 4, 2014

Financial

- Design and deploy event ticketing system, including online, toll-free and social media sales
- Manage group ticket sales
- Procure national, local and regional cash and in-kind sponsors
- Procure and manage event vendors
- Procure an event merchandiser for event-branded products for sale
- Provide event budgeting/financial reports to team on a regular basis
- All sponsor recruitment will be vetted with the Company prior to entering into an agreement to guard against conflict of categorical exclusivity infringement

Tall Ships

- Recruit Tall Ships as designated by Port
- Negotiate and draft ship contracts
- Procure and manage dockside amenities
- Manage and ensure ship dockside services are met
- Apply and secure Marine Event Permit from US Coast Guard
- Work with Tall Ships America® to secure Marine Event of National Significance (M.E.N.S.) designation
- Procure and manage Captain and crew hospitality packages

Advertising/Marketing

- Create and execute event marketing plan
- Create and manage public relations campaign
- Procure and manage creative materials
- Develop and manage event website and social media channels
- Procure in-kind advertising sponsorships

Community Relations

- Engage community groups as event ambassadors
- Provide periodic public event-update meetings
- Outreach to local and regional sailing and boating organizations

Event Site

- Design and draft event site plan
- Procure all necessary site equipment
- Procure and deploy crowd-control barricade
- Procure and manage sound, lights and staging
- Secure and manage barges for event
- Ensure embarkation and disembarkation are safe and secure for all attendees
- Create and manage trash and recycling plan
- Create and deploy event signage plan

Event Staffing

- Procure and manage paid event staff

August 4, 2014

- Procure and manage volunteer coordinator and volunteers
- Procure and manage ship liaisons
- Manage and train event staff
- Procure, manage and train on-site ticket sales staff

Programming

- Suggest and procure entertainment from port's direction
- Create and develop event education plan
- Procure historic reenactment groups to provide living, first-person, historic interpretation.
- Suggest and procure additional event attractions

Safety and Security

- Implement Safety and Security plan (IAP-Incident Action Plan)
- Coordinate and conduct first responder table-top exercise
- Procure, coordinate and manage event security staff
- Coordinate first responders at event
- Meet and coordinate with local, regional and state law enforcement
- Meet and coordinate with US Coast guard for water safety plan
- Enlist and manage involvement from US Power Squadron as *Bravo Boats*
- Ensure all required parties have legally required liability insurance

Permitting

- Procure all necessary event permits
- Ensure vendors have all necessary local and state permits
- Provide insurance liability certificates to all required parties
- Maintain file on event site of all permits
- Attend any governmental or meetings requiring permit review

August 4, 2014

## EXHIBIT B

### Compensation & Budget

These terms and conditions shall govern the relationship between the parties herein without exception unless agreed to in writing by both Parties. Please find compensation and budget for Draw Events with all details attached in their proposal attached dated revised June 6, 2014

Draw Events proposes an event-planning fee of $132,500, payable in twelve (12) equal monthly payments of $11,041 for work from August 2014 through July 2015. Draw Events shall invoice Company monthly in conjunction with a progress report based on the event milestones and event task list.

Draw Events shall provide and pay for all necessary travel, lodging and expenses incurred for travel to and from the Camden/Philadelphia area. Draw Events shall also provide and pay for all public relations, event administration and resource allocation not specifically itemized in the event budget. Draw Events LLC shall maintain it's own event liability insurance as per the attached agreement.

Profit/Loss Sharing Plan (referenced in agreement above)

- The first $470,000 of event profit shall be distributed amongst the anchor institutions.
- The remaining profit shall be distributed thirty percent (30%) to Draw Events and seventy percent (70%) to anchor institutions.
- Draw Events agrees to accept thirty percent (30%) of documented loss on the event, capped at $132,500.

### PRO FORMA BUDGET

*All Revenue*

Food vending and parking revenues shall accrue separately to CFP and DRWC and shall be paid separately to CFP and DRWC based on the revenue accrued for those activities in the respective party's control. Revenue from this activity can be held and documented in the primary event account, or separate accounts can be established for this revenue source.

Sponsorship, ticket sales and all other event revenue shall accrue to an account jointly owned by the Company, or owned by Draw Events and Company receives a monthly bank statement for review. All sponsor recruitment will be vetted with the Company prior to entering into an agreement to guard against conflict of categorical exclusivity infringement

Ticket sales audits shall be provided on a daily basis to Company designee(s) once tickets have been put on sale to the general public. Ticket proceeds will be transferred once per week on Wednesday morning. Proceeds are gross receipts and the Company (or account owner) is (are) liable for Sales Tax.

August 4, 2014

### Cash Flow

Draw Events will provide invoicing to Company, in advance for items that will need to be cash-flowed prior to the event. In some instances, by mutual agreement, Draw Events may cash flow certain items.

### Loss Mitigation:

Draw Events LLC and the Company shall mutually review revenue and expenses on a monthly basis. On a mutually agreed upon date prior to the event, should the parties agree that revenues are not meeting expectations, they shall mutually agree to cut expenses so that Company's loss shall not exceed $600,000 and Draw Events LLC loss shall not exceed $132,500. Expense reduction shall be accomplished by industry-standard tactics including scaling the event down in size to reduce staffing, security, Tall Ships, entertainment and other mutually agreeable expenses to achieve cost-savings, yet maintaining a safe environment for attendees.

August 4, 2014

Tall Ships Festival Philadelphia-Camden 2015
Pro Forma Budget

**drawevents**

| REVENUE | ATTENDANCE | AMOUNT | TOTAL |
|---|---|---|---|
| Tickets | | | |
| Single Day On Board | 26,000 | 10 | 260,000 |
| Single Day Festival Only | 7,000 | 7 | 49,000 |
| Multiday On Board | 26,000 | 19 | 494,000 |
| Gold Pass | 200 | 195 | 39,000 |
| Day Sails | 1,200 | 85 | 102,000 |
| Grand Parade of Sail | 222 | 150 | 33,300 |
| Anchor Sponsorship | | | 600,000 |
| Sponsorship | | | 200,000 |
| Vendor/Merchandise Commission | 25% Commission | | 65,000 |
| *Gross Revenue* | | | *1,842,300* |
| *Sales Tax 6.5% Avg.* | *Philadelphia=6%, Camden=7%* | | *57,615* |
| Net Revenue | | | 1,784,685 |
| Average Revenue per patron | | 29.44 | |

| Expenses | | |
|---|---|---|
| **Tall Ships Total** | | 284,000 |
| Advertising/Marketing | Creative/PR/Website/Print/Broadcast | 225,000 |
| Barges | Camden and Philadelphia | 40,000 |
| Barricades | Crowd Control | 20,000 |
| Catering | Sponsors, Ceremony, Gala, Volunteers | 25,000 |
| Dockside Expenses | Pump-out/Gen/Trans/Improvements | 15,000 |
| Education | Sail Training/Youth Programming | 7,500 |
| Electrical | Vendors/Ships/Operations | 20,000 |
| Entertainment | Stage/Strolling | 35,000 |
| Event Management | Planning/Coordination | 132,500 |
| Event Staffing | Ticketing/Gates/Garbage/Labor | 35,000 |
| Facilities Rental & Related | Lease/Street Closure | 15,000 |
| First Aid / Ambulance | EMT/Staff | 10,000 |
| Insurance | Event Liability | 5,000 |
| Longshoreman | Line Handling | 7,500 |
| Marine Police | | 10,000 |
| Official Program | Design/Production/Printing/Shipping | 15,000 |
| Permitting and Fees | Local Gov't-State | 15,000 |
| Pilotage | Foreign Flagged Pilots | 15,000 |
| Police | Crowd/Traffic | 20,000 |
| Portable Restrooms | 120 units + cleaning | 25,000 |
| Radios | Comms | 1,000 |
| Reenactors | Period Historic Interpretation | 5,000 |
| Refuse Removal | Containers/Dumping/Recycling | 20,000 |
| Security | Planning/Enforcement/Staff | 30,000 |
| Shuttle | Camden-Philadelphia | 8,000 |
| Signage | Wayfinding/Directionals | 20,000 |
| Sound, Lighting, Stage Rental | Stages/Opening Ceremony/Gala | 35,000 |
| Survey and Engineering | Site Prep | 15,000 |
| Tent Rental | Tickets/Gala/Sponsors/First Aid | 30,000 |
| Captain Package | Captain Hospitality/Lodging | 16,000 |
| Volunteer Coordination | Coordinator/Volunteer Expenses | 5,000 |
| Wireless Internet | Ticketing/Credit Cards/Guests | 2,000 |
| *Total Expenses* | | *1,163,500* |
| | Profit/Loss | 621,185 |

**REVENUE SHARING**

August 4, 2014

| | | |
|---|---|---|
| Anchor Sponsorship Planner Repayment | | 470,000 |
| Anchor Institution Profit | | |
| Remainder Profit to Share | | 151,185 |
| Anchor Sponsorship | 70% | 105,829 |
| Event Planner | 30% | 45,355 |
| Break Even Patrons After Tax | | 39,522 |
| Event Planner Limited to $132,500 downside | | |

August 4, 2014

Tall Ships Festival Philadelphia-Camden 2015
**Break Even Budget**

| REVENUE | ATTENDANCE | AMOUNT | TOTAL |
|---|---|---|---|
| Tickets | | | |
| Single Day On Board | 14,973 | 10 | 149,730 |
| Single Day Festival Only | 7,000 | 7 | 49,000 |
| Multiday On Board | 12,370 | 19 | 235,030 |
| Gold Pass | 200 | 195 | 39,000 |
| Day Sails | 800 | 85 | 68,000 |
| Grand Parade of Sail | 222 | 150 | 33,300 |
| Anchor Sponsorship | | | 600,000 |
| Sponsorship | | | 150,000 |
| Vendor/Merchandise Commission | 25% Commission | | 65,000 |
| *Gross Revenue* | | | *1,389,060* |
| Sales Tax 6.5% Avg. | *Philadelphia=6%, Camden=7%* | | 35,037 |
| Net Revenue | | | 1,354,023 |
| Avg. Per Person Revenue | | 38.07 | |

| Expenses | | | |
|---|---|---|---|
| **Tall Ships Total** | | | 249,000 |
| Advertising/Marketing | Creative/PR/Website/Print/Broadcast | | 175,000 |
| Barges | Camden and Philadelphia | | 40,000 |
| Barricades | Crowd Control | | 10,000 |
| Catering | Sponsors, Ceremony, Gala, Volunteers | | 10,000 |
| Dockside Expenses | Pump-out/Gen/Trans/Improvements | | 15,000 |
| Education | Sail Training/Youth Programming | | 7,500 |
| Electrical | Vendors/Ships/Operations | | 10,000 |
| Entertainment | Stage/Strolling | | 15,000 |
| Event Management | Planning/Coordination | | 132,500 |
| Event Staffing | Ticketing/Gates/Garbage/Labor | | 20,000 |
| Facilities Rental & Related | Lease/Street Closure | | 15,000 |
| First Aid / Ambulance | EMT/Staff | | 10,000 |
| Insurance | Event Liability | | 5,000 |
| Longshoreman | Line Handling | | 7,500 |
| Permitting and Fees | Local Gov't-State | | 15,000 |
| Pilotage | Foreign Flagged Pilots | | 15,000 |
| Police (including Marine) | Crowd/Traffic | | 15,000 |
| Portable Restrooms | 120 units + cleaning | | 15,000 |
| Reenactors | Period Historic Interpretation | | 4,000 |
| Refuse Removal | Containers/Dumping/Recycling | | 10,000 |
| Security | Planning/Enforcement/Staff | | 12,500 |
| Shuttle | Camden-Philadelphia | | 8,000 |
| Signage | Wayfinding/Directionals | | 10,000 |
| Sound, Lighting, Stage Rental | Stages/Opening Ceremony/Gala | | 15,000 |
| Survey and Engineering | Site Prep | | 10,000 |
| Tent Rental | Tickets/Gala/Sponsors/First Aid | | 12,000 |
| Captain Package | Captain Hospitality/Lodging | | 16,000 |
| Volunteer Coordination | Coordinator/Volunteer Expenses | | 2,500 |
| Wireless Internet | Ticketing/Credit Cards/Guests | | 2,000 |
| *Total Expenses* | | | 883,500 |
| | Profit/Loss | | 470,523 |

| REVENUE SHARING | | | |
|---|---|---|---|
| Anchor Sponsorship Repayment | | | 470,000 |
| | Break Event Tickets | 23,206 | |

August 4, 2014



August 4, 2014

# drawevents

## Tall Ships Camden-Philadelphia
### Strategic Plan Milestones



| ACTIVITY | PLAN START | PLAN DURATION | ACTUAL START | ACTUAL DURATION | PERCENT COMPLETE |
|---|---|---|---|---|---|
| Budget | 1 | 13 | 0 | 0 | 0% |
| Revenue Identified | 1 | 12 | 0 | 0 | 0% |
| Expenses Identified | 1 | 11 | 0 | 0 | 0% |
| Debrief | 12 | 2 | 0 | 0 | 0% |
| Accounting | 1 | 13 | 0 | 0 | 0% |
| Loss Mitigation | 6 | 6 | 0 | 0 | 0% |
| Event Scaling | 8 | 5 | 0 | 0 | 0% |
| Stakeholder Communications | 1 | 13 | 0 | 0 | 0% |
| On Site meetings | 1 | 13 | 0 | 0 | 0% |
| Strategic Event Plan | 1 | 2 | 0 | 0 | 0% |
| Class A Ship Recruitment | 1 | 10 | 0 | 0 | 0% |
| Invitation Sent | 1 | 5 | 0 | 0 | 0% |
| Contract Executed | 1 | 10 | 0 | 0 | 0% |
| Class B Ship Recruitment | 1 | 9 | 0 | 0 | 0% |
| Invitation Sent | 1 | 5 | 0 | 0 | 0% |
| Contract Execution | 1 | 9 | 0 | 0 | 0% |
| Site Plan - Both Sides of Delaware | 1 | 9 | 0 | 0 | 0% |
| Footprints Identified | 2 | 4 | 0 | 0 | 0% |
| Activity Areas Identified | 2 | 5 | 0 | 0 | 0% |
| Docks | 2 | 8 | 0 | 0 | 0% |
| Ingress/Egress | 3 | 8 | 0 | 0 | 0% |
| Vending | 2 | 10 | 0 | 0 | 0% |
| Incident Action Plan (IAP) | 4 | 7 | 0 | 0 | 0% |
| Signage | 8 | 1 | 0 | 0 | 0% |
| Restrooms/Portalets | 5 | 6 | 0 | 0 | 0% |
| Performance Areas | 5 | 6 | 0 | 0 | 0% |
| Safety | 4 | 7 | 0 | 0 | 0% |
| Sound & Lighting | 6 | 6 | 0 | 0 | 0% |
| Staging | 6 | 6 | 0 | 0 | 0% |
| Volunteer Coordination | 3 | 9 | 0 | 0 | 0% |
| Coodinator Retained | 5 | 4 | 0 | 0 | 0% |
| Volunteer Recruitment | 4 | 7 | 0 | 0 | 0% |
| Training | 10 | 2 | 0 | 0 | 0% |
| Ticketing | 5 | 7 | 0 | 0 | 0% |
| Ticket Text | 4 | 1 | 0 | 0 | 0% |
| Disclaimers Drafted | 4 | 1 | 0 | 0 | 0% |
| Pricing and Capacity | 3 | 2 | 0 | 0 | 0% |
| Group Ticket Sales | 4 | 8 | 0 | 0 | 0% |
| Deployment | 5 | 7 | 0 | 0 | 0% |
| Event Merchandising | 5 | 7 | 0 | 0 | 0% |
| Programming | 5 | 5 | 0 | 0 | 0% |
| Event Times | 2 | 4 | 0 | 0 | 0% |
| Parade of Sail | 2 | 4 | 0 | 0 | 0% |
| Receptions | 3 | 8 | 0 | 0 | 0% |
| Performer Recruitment | 4 | 7 | 0 | 0 | 0% |
| Contracts Executed | 4 | 7 | 0 | 0 | 0% |
| Vendor Recruitment | 3 | 9 | 0 | 0 | 0% |
| Sponsorship Recruitment | 2 | 9 | 0 | 0 | 0% |
| Proposals | 2 | 9 | 0 | 0 | 0% |
| Advertising | 5 | 7 | 0 | 0 | 0% |
| Ad Plan | 5 | 2 | 0 | 0 | 0% |

PERIODS 1 2 3 4 5 6 7 8 9 10 11 12 13

Plan
Actual
% Complete
Actual (beyond plan)
% Complete (beyond plan)

August 4, 2014



| Task | | | | % |
|---|---|---|---|---|
| Public Relations | 4 | 8 | 0 | 0 | 0% |
| PR Plan | 4 | 8 | 0 | 0 | 0% |
| Educational Programming | 4 | 8 | 0 | 0 | 0% |
| Safety/Security-NJ and PA | 4 | 8 | 0 | 0 | 0% |
| M.E.N.S. Permit Tall Ships America | 2 | 7 | 0 | 0 | 0% |
| Creative Materials | 3 | 9 | 0 | 0 | 0% |
| Social Media | 1 | 11 | 0 | 0 | 0% |
| Sponsorship Fulfillment | 7 | 5 | 0 | 0 | 0% |
| Community Engagement NJ & PA | 3 | 9 | 0 | 0 | 0% |
| Governmental Permits | 3 | 8 | 0 | 0 | 0% |
| Assess Requirments-Camden & Philly | 2 | 5 | 0 | 0 | 0% |
| Marine Event (Not M.E.N.S.) | 3 | 8 | 0 | 0 | 0% |
| Declaration of Security (DOS) | 12 | 1 | 0 | 0 | 0% |
| Ship Dockside Services | 6 | 6 | 0 | 0 | 0% |
| Liaison Assignment | 6 | 6 | 0 | 0 | 0% |
| Trash | 6 | 6 | 0 | 0 | 0% |
| Waste Pumpout | 8 | 4 | 0 | 0 | 0% |
| Electric Service | 6 | 6 | 0 | 0 | 0% |
| Crew Transportation | 8 | 4 | 0 | 0 | 0% |
| Captains' Lodging | 6 | 6 | 0 | 0 | 0% |
| Potable Water | 6 | 6 | 0 | 0 | 0% |
| Crew Showers | 6 | 6 | 0 | 0 | 0% |
| Parking | 3 | 9 | 0 | 0 | 0% |
| Locations and Stalls | 3 | 4 | 0 | 0 | 0% |
| Pre-sales with tickets | 5 | 7 | 0 | 0 | 0% |
| Insurance | 4 | 8 | 0 | 0 | 0% |
| Vendors | 4 | 8 | 0 | 0 | 0% |
| Ships | 4 | 8 | 0 | 0 | 0% |
| Youth Programming | 3 | 9 | 0 | 0 | 0% |
| Event Staffing | 5 | 8 | 0 | 0 | 0% |